1
2
3
4
5
6                     IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9    William Denning,                    )   No. CV 07-8021-PCT-PGR (HCE)
                                          )
10              Petitioner,               )   **REPORT & RECOMMENDATION**
                                          )
11   vs.                                  )
                                          )
12                                        )
     Laura Schweitzer; et. al.,           )
13                                        )
                Respondents.              )
14                                        )
                                          )
15   ─────────────────────────────────── )

16       Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus

17   filed pursuant to 28 U.S.C. § 2254 (Doc. No. 6).  Pursuant to the Rules of Practice of this

18   Court, this matter was referred to the undersigned Magistrate Judge for Report and

19   Recommendation.  For the following reasons the Magistrate Judge recommends that the

20   District Court dismiss the Petition for Writ of Habeas Corpus as untimely.

21   **I.      FACTUAL AND PROCEDURAL BACKGROUND**

22          A.      State Proceedings

23                  1.      Indictment and Conviction

24       On June 12, 1986, Petitioner was indicted for four counts of Sexual Assault, class 2

25   felonies, three of which were dangerous crimes against children; three counts of Sexual

26   Conduct With A Minor, class 2 felonies, each of which were dangerous crimes against

27   children; and five counts of Kidnapping, class 2 felonies, four of which were dangerous

28   crimes against children.  (Answer (Doc. No. 15), p. 2 & Exh. A).

1    On October 1, 1986, Petitioner pled guilty to two counts of Sexual Assault, both
2    dangerous crimes against children, pursuant to a plea agreement providing for a stipulated
3    sentence of two consecutive, mitigated 15-year prison terms. (Answer, p. 2 & Exh. B, C).
4    However, on October 30, 1986, defense counsel informed the trial court that Petitioner
5    wanted to withdraw from the plea agreement on the grounds that all of the statements he gave
6    to police when he admitted guilt and the admissions that he made at the change of plea
7    hearing were false. (Answer, p. 3 & Exh. E, p. 32[1], Exh. F, pp. 35-37). Petitioner argued
8    that during his initial interview with police, one officer promised "he would receive lenient
9    treatment if he confessed," including the ability to serve his sentence in a mental institution,
10   instead of prison. (Answer, p.3; *see also* Answer, Exh. F, p.36). The State opposed
11   Petitioner's request to withdraw his plea and the matter was set for an evidentiary hearing
12   to determine whether "manifest injustice" required that Petitioner be permitted to withdraw
13   from the plea agreement. (Answer, p.3; *see also* Answer, Exh. F, pp. 36, 40-41).

14        On December 15, 1986, upon conclusion of the evidentiary hearing, the trial court
15   found Petitioner's plea was voluntary because no evidence showed that, in exchange for an
16   admission of guilt, Petitioner was promised the ability to serve his sentence in a mental
17   institution. (Answer, p.3 & Exh. H). The trial court found no "manifest injustice...to correct
18   by allowing [Petitioner] to withdraw his guilty plea." (Answer, Exh. H, p. 55).

19        On December 30, 1986, in accordance with the terms of the plea agreement, the trial
20   court sentenced Petitioner to two consecutive, mitigated 15-year terms of imprisonment.
21   (Answer, p.3 & Exh. J, pp. 63-73).

22
23
24
25
26        [1]Counsel for Respondents has sequentially numbered the bottom right corner of each
27   page of the exhibits submitted in support of Respondents' Answer. (*See* Answer, p.2).
     Citations herein to Respondents' exhibits refer to the pagination supplied by Respondents'
28   counsel.

2.      Direct Appeal

On January 5, 1987, Petitioner, through counsel, filed a notice of appeal and his opening brief was filed on May 22, 1987.[2]  (Answer, Exh. K).  On appeal, Petitioner argued that:

1.      His guilty plea was invalid because the record did not establish a factual basis for the plea; and

2.      His plea was not knowing, intelligent and voluntary.

(*Id.*).

On December 15, 1987, the Arizona Court of Appeals affirmed the conviction and sentence. (Answer, Exh. L; *see also State v. Denning,* 155 Ariz. 459, 747 P.2d 620 (App. 1987)).  Petitioner did not seek review of the appellate court's decision.  (Petition, p.2).

3.      First Post-Conviction Relief Proceeding

On November 15, 1988, Petitioner filed a timely *pro se* petition for post-conviction relief (hereinafter "PCR") under Ariz.R.Crim.P. 32, and, thereafter, counsel was appointed to represent him.  (Answer, p.4 & Exh. N, O).  Petitioner raised the following claims in his *pro se* First PCR Petition:

1.      The introduction at trial of a coerced confession;

2.      The introduction at trial of a statement obtained in absence of a lawyer at a time when representation was constitutionally required;

3.      Ineffective assistance of counsel at every critical stage of the proceeding;

4.      An unlawfully induced plea of guilty;

5.      "The existence of newly-discovered material which requires the court to vacate the conviction or sentence [because] Defendant was not in Mojava [sic] counties [sic] jurisdiction 3-31-88.  If crime happened outside Majave [sic] county, this court has no jurisdiction"; and

---

[2]In 1986, when Petitioner pled guilty, Arizona allowed direct appeals for defendants who had entered guilty pleas. (*See* Answer, p. 13).

1    6.    Lack of jurisdiction of the court which entered the conviction or sentence.

2    (Answer, Exh. N).

3        The trial court granted Petitioner's counsel leave to file an amended petition.

4    (Answer, Exh. O).  Although the trial court granted Petitioner's requests for extensions of

5    time to file an amended PCR petition, Petitioner did not file an amended petition within the

6    time allowed, nor did he request further extensions of time to file same.  (Answer, Exh. O,

7    P).  On April 6, 1989, the trial court denied Petitioner's PCR Petition.(Answer, Exh. Q).

8    Specifically, the trial court dismissed Petitioner's claims based on a coerced confession

9    (ground 1); the use of a statement obtained without a lawyer at time when representation was

10   constitutionally required (ground 2); an unlawfully induced plea of guilty (ground 4); and

11   lack of jurisdiction (ground 6), because each of those grounds either was raised or could have

12   been raised on direct appeal.  (*Id.*).  The trial court rejected Petitioner's claim of ineffective

13   assistance of counsel (ground 3) which was based on "newly-discovered material" because

14   such claim was not supported by "affidavits or even unsworn statements clarifying which

15   attorney was ineffective or in what manner he may have been ineffective.  The Court [found]

16   that Defendant's Petition does not raise even a colorable claim of ineffective assistance of

17   counsel that would justify the setting of an evidentiary hearing on this issue."  (*Id.* at pp.123-

18   124).    The trial court also rejected Petitioner's claim, based upon "newly-discovered

19   material", that he was not within the jurisdiction of Mohave county at the time of the offense

20   (ground 5):

21         The Court can determine no particular significance that the date March 31,
           1988, or March 31 of any other year, has with regard to this case.  If this Court
22         had no jurisdiction over the Defendant or this case at a time when it acted in
           a manner affecting either the Defendant or this case, such lack of jurisdiction
23         could have been discovered early in this case with the exercise of very little
           diligence and could have been brought to the Court's attention more promptly
24         than 2 years after sentencing.

25   (*Id.* at p.124).

26        Petitioner did not seek review from the Arizona Court of Appeals.  (Answer, p. 4;

27   Petition, p.2).

28

### 4. Second Post-Conviction Relief Proceeding

On December 17, 1990, Petitioner filed a *pro se* Second PCR Petition and accompanying affidavit. (Answer, Exh. R, S). Therein, Petitioner claimed that:

1.     His statement was used against him although it was obtained in the absence of a lawyer when representation was constitutionally required; and

2.     He should have received concurrent, rather than consecutive, sentences, "because of weight of mitigating circumstances out-weighing the aggravating circumstances."

(*Id.*).

On January 21, 1991, the trial court denied Petitioner's Second PCR Petition. (Answer, Exh. U). The trial court held that Petitioner's claim of an unlawfully obtained confession was waived by his guilty plea; was addressed and denied by the trial court's ruling on Petitioner's motion to withdraw his guilty plea; was addressed and denied on direct appeal; and was addressed and denied in the First PCR proceeding. (*Id.*). The trial court also held that Petitioner's sentencing claim was waived by his guilty plea and could have been raised on appeal and in his First PCR Petition. (*Id.*). Thus, the court held that both of Petitioner's claims were precluded by his guilty plea and under Ariz.R.Crim.P. 32.2(a) governing PCR proceedings. (*Id.*).

Petitioner did not seek appellate-court review from the Arizona Court of Appeals. (Answer, p. 5; Petition, p. 3).

### 5. Third Post-Conviction Relief Proceeding

On July 1, 2005, Petitioner, acting *pro se*, filed a third notice of PCR, asserting the following claims:

1.     *Miranda* rights violation;

2.     Illegal plea agreement;

3.     Ineffective assistance of trial counsel;

4.     Ineffective assistance of appellate counsel;

5.     Illegal sentences; and

1    6.    Preclusion.

2    (Answer, Exh. V).  On September 9, 2005, Petitioner filed his *pro se* Third PCR Petition

3    wherein he alleged facts in support of the first five claims set out in his Notice. (Answer,

4    Exh. X). He also included a claim of unlawful arrest.  (*Id.*).  To support his claims of illegal

5    plea agreement and illegal sentences, Petitioner asserted that "new information...from...trial

6    transcripts from Nevada..." state court showed that one of the victims in the present case

7    "was *15* at the time of the offense.  That changes the sentence structure.  That, therefore,

8    makes the sentence illegal."  (Answer, Exh. X at p. 155 (emphasis in original); *see also Id.*

9    at pp. 160-161).  "[N]o affidavits, records or supporting evidence were attached to..."

10   Petitioner's Third PCR Petition.  (Answer, p.6; *see also* Answer, Exh. X).

11        On September 21, 2005, the trial court denied Petitioner's Third PCR Petition because

12   "[a]ny colorable claims for relief raised by the Defendant in his Petition either were raised

13   or could have been raised more than 10 years either on his direct appeal under Rule 31 or his

14   petition for post-conviction relief.  The Defendant's claims are precluded under Rule

15   32.2(a)."  (Answer, Exh. Y at p.170).

16        On September 28, 2006, the Arizona Court of Appeals denied Petitioner's request for

17   review.  (Answer, p. 6; Petition, Exh. D).

18              6.    Fourth Post-Conviction Relief Proceeding

19        On October 21, 2005, Petitioner filed a petition for writ of habeas corpus with the

20   state trial court asserting the following claims:

21        1.    "[W]rong sentence based on perjured testimony..." presented to the grand jury

22              concerning the age of one of the victims;

23        2.    Neither victim could identify Petitioner;

24        3.    Illegal photo array;

25        4.    Illegal plea agreement; and

26        5.    The trial court failed to provide records to enable Petitioner "to fully include

27              issues in PCR."

28   (Answer, Exh. AA).

On November 15, 2005, pursuant to Ariz.R.Crim.P. 32.3, the trial court construed Petitioner's Writ of Habeas Corpus as a fourth PCR Petition. (Answer, p.4 & Exh. BB). In denying Petitioner's Fourth PCR Petition, the trial court held that Petitioner's claims were precluded under Ariz.R.Crim.P. 32.2(a) because his claims either could have been or actually were raised on direct appeal or in a prior PCR proceeding. (*Id.*) The court went on to address Petitioner's claim that one of the victims in his case was not the age claimed which affected the sentence he received, stating in pertinent part:

> The Defendant asserts that perjured testimony was presented to the Grand Jury regarding the victim's age, that she was really 15 years of age and that he never learned this fact until he read the 'trial transcripts' from some unidentified proceeding in Nevada. The Defendant has attached no exhibits or affidavits to his petition. He has not included any transcript of the Nevada proceeding referred to in his petition. He has not indicated when he first learned of this discrepancy regarding the Defendant's [sic] age. He has not indicated how it is that neither he nor any of his previous court-appointed attorneys could [sic] have discovered the age of the victim until almost 20 years after the crime that he pled to. The Court determines that the Defendant has failed to state a colorable claim for relief under Rule 32.1(e) based on newly discovered material facts.

(*Id.* at p. 183).

On December 5, 2005, Petitioner filed a motion for reconsideration in the trial court and attached two transcript pages from a December 7, 1987 evidentiary hearing and three pages from a December 8, 1987 jury trial in the State of Nevada's criminal prosecution of Petitioner.[3] (*Answer,* Exh. CC). Petitioner claimed that at the Nevada evidentiary hearing, one of the victims who he pled guilty to sexually assaulting in the Arizona case testified that she was 15 years of age on April 24, 1986 which was the date of the time of the offense alleged in Count IV of Petitioner's Arizona indictment. (*Id.* at pp. 190, 193; *see also* Answer Exh. A). During the Nevada jury trial, another of Petitioner's victims testified that she lived

---

[3]Two of the submitted pages were the title pages for each proceeding.

in Bullhead City at the time of the offense and was sexually assaulted by Petitioner in the vacant lot of a nursery located near Highway 95.[4]  (Answer, Exh. CC, p.196).

In his motion for reconsideration, Petitioner asserted that "he has waited for years to obtain the trial records from Nevada.  He recently obtained them, and then promptly filed his 3rd Petition for Post-Conviction Relief as required under Rule 32.1(e)...."  (*Id.* at p.187).  Petitioner also attached to his motion for reconsideration a "copy of an envelope..." which according to Petitioner "show[ed] that the transcripts were sent to the wrong address for 17 years.  He finally received them in August, 2005!"  (*Id.* at p.190).  Petitioner argued that if the trial court had held an evidentiary hearing on his Third PCR Petition, then "the transcripts showing testimony by the victims at the hearing and trial in Nevada would have been seen by this Court as proof, as the testimony was under oath."  (*Id.*).

On January 4, 2006, the trial court denied Petitioner's motion for reconsideration stating, "[i]t is not clear why the Defendant attached to his Motion for Reconsideration transcripts which he could have attached to his Petition for Writ of Habeas Corpus but chose not to."  (Answer, Exh. DD).

Petitioner asserts that his petition for review was denied by the Arizona Court of Appeals.  (Petition, p.3).

7.      Fifth Post-Conviction Relief Proceeding

On January 26, 2006, Petitioner filed a second petition for writ of habeas corpus in the trial court wherein he raised the following claims:

1.      Illegal sentence based on perjured testimony presented to the grand jury concerning one of the victim's age;

2.      Failure of identification;

3.      Illegal photo array;

---

[4]Although Petitioner did not amend his Fourth PCR Petition to add a specific jurisdictional claim, he argued in his motion for reconsideration that "[t]he transcripts not only covered the age but location of one of the alleged incidents being out of Arizona." (Answer, p.7 n.6; *see also* Answer, Exh. CC, pp.189-190).

1        4.     The trial court "refused to supply records so Petitioner could fully include
2                 issues in PCR."

3    (Answer, Exh. EE).  In support of his claim of perjured testimony, Petitioner attached two

4    transcript pages from the December 7, 1987 Nevada evidentiary hearing during which,

5    Petitioner maintained, one of the victims who he pled guilty to sexually assaulting in the

6    Arizona case testified that she was 15 years-old at the time of the offense.  (*Id.* at p. 213).

7    Petitioner argued, *inter alia,* that "[v]ictim [WG] testified that she was 15 at the time of the

8    incident....That changes the charge from Dangerous Crimes Against Children to a regular

9    charge, thus changing the sentence as well."  (*Id.* at pp. 202-203).

10          On February 7, 2006, the trial court construed Petitioner's second petition for writ of

11   habeas corpus as Petitioner's Fifth PCR Petition and denied the petition.  (Answer, Exh. FF).

12   The trial court stated that the claims were precluded under Rule 32.2(a) of the Arizona Rules

13   of Criminal Procedure.  (*Id.* at p.214).  With regard to Petitioner's claim that perjured

14   testimony was presented to the grand jury as to the age of one of the victims, the trial court

15          express[ed] the same concerns about this claim for relief as it did in the Order
       dated November 15, 2005 [denying Petitioner's Fourth PCR Petition].  In
16          addition, it is now clear that the Defendant is basing his claim on testimony
       from a hearing in Nevada on December 7, 1987, at which he was apparently
17          present when the victim testified that she was 15 years old at the time of this
       incident.  Knowing that he had just recently been sentenced to 15 years in
18          prison in Arizona for a crime based on the fact that the victim was under 15 at
       the time, it is hard to understand why the Defendant waited 18 years before
19          making this claim.  The Defendant has not exercised due diligence in raising
       this claim of "newly discovered" evidence.
20              The Court also notes that he is basing his claim at least in part on the
       assertion that perjured testimony was presented to the Grand Jury.  He has
21          submitted, however, no police reports or other documentation as to the
       victim's true age to suggest that any witness testifying before the Grand Jury
22          knew her correct age or deliberately or recklessly misrepresented her age in
       order to secure an Indictment on a more serious charge.
23              The Court is not convinced that the Defendant has raised a material
       factual claim entitling him to an evidentiary hearing for which the State would
24          have to track down a possible witness 18 years after the Defendant became
       aware of the basis for his claim.
25   (*Id.* at p. 215).

26          On April 20, 2007, the Arizona Court of Appeals denied Petitioner's request for
27   review.  (Answer, p.9; Petition, Exh. D).

28

B.      Petitioner's Federal Petition for Writ of Habeas Corpus

The instant *pro se* Petition for federal habeas relief was signed by Petitioner on May 24, 2007 and filed-stamped by the Clerk of the Court on May 29, 2007. (Doc. No. 6). A federal habeas petition is deemed filed when handed by the inmate to a prison official for mailing. *See Houston v. Lack,* 487 U.S. 266, 270-271 (1988); *Patterson v. Stewart,* 251 F.3d 1243, 1245 n.2 (9th Cir. 2001) ("Under the prison mailbox rule...a *pro se* petitioner's petition is deemed constructively filed at the moment it is delivered to prison officials to be forwarded to the court clerk.") The Court deems the Petition commencing this action as filed on May 24, 2007. *See id.*

Petitioner raises the following grounds for relief:

1.      Violation of his 5th and 14th Amendment rights to due process based upon unlawful arrest without a warrant, that Arizona detectives lacked jurisdiction to arrest him in Nevada, and that one of the offenses "may have taken place in California–not in Arizona..." (Ground I);

2.      Violation of the "5th and 6th Amendment-*Miranda* violation" (Ground II);

3.      Violation of the 6th and 8th Amendments in that he received an illegal sentence and was "over-charged" (Ground III);

4.      Violation of the 6th Amendment because he was denied the right to withdraw from his plea agreement and, *inter alia,* had Petitioner been permitted to proceed to trial, the victim's age would have come to light thus resulting in a lower sentence (Ground IV)[5];

5.      Ineffective assistance of trial counsel based upon, *inter alia,* counsel's failure to "actively challenge the age question" and because counsel "took the word

---

[5]Within Ground IV, Petitioner also advances claims that his attorney lied to him and "did *not* actively pursue the correct ages of the alleged victims." (Petition, p.8) In Ground V, Petitioner again raises his claim that counsel failed to "actively challenge the age question." (*Id.* at p.9). Any claim regarding trial counsel's alleged failure to determine the victim's age is addressed in the Court's analysis of Ground V.

of the prosecutor who said that the victims did *not* want to testify....Yet, the victims went to Nevada, and testified there!" (Ground V); and

6.  Ineffective assistance of appellate counsel based upon, *inter alia,* counsel's failure to raise ineffective assistance of trial counsel on the ground that trial counsel failed to "learn the correct ages of the alleged victims" and that appellate counsel "did *not* try to change the wrong charge or illegal sentence on one of the counts" (Ground VI).

(Petition) (emphasis in original).

Respondents filed their Answer (Doc. No. 15) on September 5, 2007. Petitioner filed his Reply on September 20, 2007. (Doc. No. 19).

## II.   DISCUSSION

Respondents argue that the Petition is time-barred under the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA").

Because Petitioner's federal habeas petition was filed after the AEDPA's effective date of April 24, 1996, "the provisions of the [AEDPA] apply to this case." *Patterson,* 251 F.3d at 1245 (*citing Smith v. Robbins* 528 U.S. 259, 268 n.3 (2000)). The AEDPA "imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Id*. (citing 28 U.S.C. § 2244(d)(1)) (footnote omitted). Pursuant to section 2244, the limitations period:

> shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

The record herein is clear that Petitioner's conviction became final prior to enactment of the AEDPA in 1996. *See infra,* at II.D. "State prisoners, like [Petitioner herein], whose convictions became final prior to AEDPA's enactment, had a one-year grace period [–until April 24, 1997–] in which to file their petitions." *Patterson,* 251 F.3d at 1245-1246 (citations omitted).

Because Petitioner initiated this action on May 24, 2007, more than ten years after the AEDPA limitations period expired, his Petition is untimely filed unless 28 U.S.C. § 2244(d)(1)(B),(C), or (D) operate to delay commencement of the statute of limitations or tolling applies.

A.     Section 2244(d)(1)(B) does not apply

Respondents are correct that "Petitioner has neither alleged nor proved that a later statute-of-limitations starting date applies under section 2244(d)(1)(B) because of an 'impediment to filing an action created by State action in violation of the Constitution or laws of the United States'..." that prevented Petitioner from filing a timely application. (Answer, p.10 n.7 (*quoting* 28 U.S.C. §2244(d)(1)(B)). Consequently, section 2244(d)(1)(B) does not alter the statute of limitations calculation in this case.

B.     Section 2244(d)(1)(C) does not apply

Respondents also correctly assert that Petitioner neither alleges nor establishes that the commencement of the statute of limitations herein involves a newly recognized constitutional right that applies retroactively to Petitioner's case. (Answer, p.10 n.7). Consequently, section 2244(d)(1)(C) does not apply to alter the statute of limitations calculation in this case.

C.     Section 2244(d)(1)(D) does not apply

Where, despite the exercise of due diligence, the petitioner was unable to discover the "factual predicate" of his claim, the statute of limitations does not begin to run on that particular claim until either the discovery of such facts or the time when Petitioner could have discovered such facts, whichever is earlier. *See* 28 U.S.C. § 2244(d)(1)(D). Respondents address the applicability of section 2244(d)(1)(D) to Grounds I and III only of

the instant Petition. A fair reading of the Petition also supports the conclusion that Ground Grounds V and VI as they relate to ineffective assistance of trial and appellate counsel concerning the issue of the age of the victim in Count IV of the Indictment, fall within the section 2244(d)(1)(D) analysis as well. However, Respondents are correct that section 2244(d)(1)(D) is inapplicable to Ground II, IV, and portions of Grounds V and VI that do not involve claims based on the victim's age given that the factual predicate for those claims was known or should have been known by Petitioner at the time of his conviction and/or appeal.

With respect to the claims based on the Nevada testimony, *i.e.,* Grounds I, III, and portions of Grounds V and VI, there is no dispute on the instant record that in December 1987, during the Nevada criminal proceedings against Petitioner, Petitioner was made aware of the fact that one victim's testimony suggested that the Arizona offense occurred outside of Arizona and another victim testified that she was 15 at the time of the offense upon which Count IV of the Arizona Indictment is based. (*See e.g.* Petition, p.12 ("When W. Gannon said she was age 15 when the crime took place (while under oath), I knew I needed a copy of the testimony to prove my suspicions all along were right.")). Thus, the record is clear the Petitioner knew about these "new" facts in 1987.

Petitioner argues that he required evidence of these facts to pursue his claims, and thus, he could not proceed until 2005 when he obtained the transcripts. (*See* Petition, p.12). As to diligence, Petitioner represented to the Arizona court that "the transcripts were sent to the wrong address for 17 years. He finally received them in August, 2005!" (Answer, Exh. CC, p. 190). Petitioner represents to this Court that when he "tried to obtain the transcripts, he was told they would cost around $4,000.00 from the court in Nevada. He did *not* have the funds to purchase them. After many years, Petitioner found someone who knew how to get them at no cost." (Reply, p.6) (emphasis in original) Further according to Petitioner, "the records were sent twice to a wrong address." (*Id.*). Petitioner also asserts that "he *never* knew of the *A.E.D.P.A.* restrictions for filing until he met the person who was able to obtain the Nevada transcripts without charge." (Reply, pp.9-10) (emphasis in original). He also

attached to his Petition correspondence written in 2005 requesting transcripts of a May 1986 Nevada extradition hearing. (Petition, Exh. C).

The Ninth Circuit has been clear that the AEDPA statute of limitations commences when the petitioner knows the important facts. *See Hasan v. Galaza,* 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (the statute of limitations begins to run when the petitioner knows the important facts, not when the prisoner recognizes their legal significance). The record shows that Petitioner knew the important facts relating to each victim's testimony in December 1987.[6] Because Petitioner knew about the "new" facts in 1987, section 2241(d)(1)(D) does not apply to alter the statute of limitations calculation in Petitioner's case.

## D.     Statutory tolling does not apply

The AEDPA limitations period is statutorily tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. § 2244(d)(2). When Petitioner was convicted, Arizona law permitted defendants who pled guilty to seek direct appeal. In 1992, Arizona rules were amended to reflect that defendants in noncapital cases who pled guilty waived their right to file a conventional direct appeal, and instead could seek review only by filing a petition for post-conviction relief. *See Summers v. Schriro,* 481 F.3d 710, 715 (9th Cir. 2007) (referring to such post-conviction relief proceedings as "Rule 32 of-right proceedings...."). In 2003, the Ninth Circuit held that a Rule 32 of-right proceeding is a form of direct review, not collateral review, for purposes of the AEDPA statute of limitations. *Id.* at 715-717.

Respondents persuasively argue that *Summers* does not apply to petitioners, like the instant Petitioner, who pled guilty before 1992 and who thereafter filed a direct appeal. (Answer, p.14). If *Summers* does not apply, then Petitioner's state conviction became final

---

[6]Additionally, as to Petitioner's claim in Ground V that trial counsel was ineffective for taking "the word of the prosecutor who said that the victims did *not* want to testify, but put it behind them. Yet, the victims went to Nevada, and testified there[]" (Petition, p.9), it is clear on the instant record that Petitioner was aware in 1987 that the victims testified in Nevada.

- 14 -

on January 14, 1988, the date his opportunity to petition the Arizona Supreme Court for review of the appellate court's decision expired. (*See* Answer (*citing* Ariz.R.Crim.P. 31.19(a)). Moreover, even if *Summers* did apply, Petitioner's conviction would have become final at the conclusion of his First PCR Proceeding, including review of that proceeding, or upon the expiration of the time available to initiate such a proceeding. *Summers,* 481 F.3d at 711. Here, the trial court denied Petitioner's First PCR Petition on April 6, 1989 and the time for Petitioner to file a petition for review expired thirty days later on May 6, 1989. *See* Ariz.R.Crim.P. 32.9(c). Under either scenario, Petitioner's conviction became final long before enactment of the AEDPA, thus rendering April 24, 1997 the applicable statute of limitations absent tolling. *See Patterson,* 251 F.3d at 1256. Therefore, to any extent that section 2244(d)(2) would have applied to Petitioner's case, that section would work to toll the time during which any properly filed application for State post-conviction or other collateral review was pending if such application was filed between April 24, 1996–the date of AEDPA's enactment– and April 24, 1997. No PCR proceedings were initiated or pending between April 24, 1996 and April 24, 1997. Under these circumstances, Petitioner's limitations period was not statutorily tolled and, instead, expired on April 24, 1997.

Petitioner's three PCR petitions filed after April 24, 1997 did not restart or otherwise impact the AEDPA statute of limitations. A state post-conviction relief proceeding filed after expiration of the AEDPA statute of limitations period has no effect whatsoever on the statute of limitations calculation because such state proceeding can neither revive the limitations period nor toll the already-expired period. *See Ferguson v. Palmateer,* 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *Jiminez v. Rice,* 276 F.3d 478, 482 (9th Cir. 2001) (where petitioner filed his state post-conviction relief proceeding "after the AEDPA statute of limitations ended...[t]hat delay resulted in an absolute time bar..."); *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). Consequently, section 2244(d)(2) does not render Petitioner's petition timely.

E.    Equitable tolling is not warranted

Respondents argue that in light of the U.S. Supreme Court's decision *Bowles v. Russell,* 551 U.S. 205 (2007), the AEDPA is not subject to equitable tolling. (*See* Answer at pp. 18-19). The Ninth Circuit has acknowledged that the Supreme Court has never explicitly determined whether section 2244(d) allows for equitable tolling. *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009), *cert. denied,* __ U.S. __, __ S.Ct.__, 2009 WL 2058179 (Oct. 5, 2009). *See also Harris v. Carter,* 515 F.3d 1051, 1054 n.4, *cert. den.,* __ U.S. __, 129 S.Ct. 397 (2008). However, the Ninth Circuit has specifically held that "*Bowles* did not invalidate equitable tolling of the AEDPA statute of limitations." *Waldron-Ramsey,* 556 F.3d at 1011 n.2. Therefore equitable tolling remains viable for Petitioner herein.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGulglielmo,* 544 U.S. 408, 418 (2005). *See also Waldron-Ramsey,* 556 F.3d at 1011. Additionally, "[a] petitioner must show that his untimeliness was caused by an external impediment and not his own lack of diligence." *Bryant v. Arizona Attorney General,* 499 F.3d 1056, 1061 (9th Cir. 2007). *See also Waldron-Ramsey,* 556 F.3d at 1011 (an external force must cause the untimeliness, thus mere oversight, miscalculation or negligence on the petitioner's part would preclude the application of equitable tolling). The petitioner must also establish that the extraordinary circumstances asserted were, in fact, the reason why the federal habeas petition was untimely. *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir. 2003). Moreover, a *pro se* petitioner's "lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006).

Petitioner asserts that "when...[he] tried to obtain the transcripts he was told they would cost around $4,000.00 from the court in Nevada. He did *not* have the funds to purchase them. After many years, Petitioner found someone who knew how to get them at no cost. As shown the records were sent twice to the wrong address. Once he recieved the

transcripts, he file[d] a Petition in State Court." (Reply, p.6)(emphasis in original). According to Petitioner, he never knew of the AEDPA statute of limitations "until he met the person who was able to obtain the Nevada transcripts without charge." (*Id.* at pp. 9-10). He also maintains that "[s]ince A.E.D.P.A. started in 1996, the same year that prison law libraries were being removed, *only* a few 'jail house lawyers' would have learned about the new rules of time for filing Habeas petitions. Petitioner was *not* knowledgeable in the law." (*Id.* at p. 10) (emphasis in original). He further claims that he was "impeded by *not* being able to obtain the required proof for 18 years." (*Id.* at p.9) (emphasis in original). Finally, he argues that the Nevada testimony establishes his actual innocence and "the claim of actual innocence does not have a time period to file." (*Id.*).

Petitioner's ignorance of the law and lack of legal sophistication, alone, do not constitute extraordinary circumstances to warrant equitable tolling. *See Raspberry,* 448 F.3d at 1154. Petitioner concedes that he was unaware of the AEDPA statute of limitations. There is no showing that Petitioner attempted to ascertain his rights with regard to federal habeas review at any time prior to the filing of the instant action. Under the instant circumstances, any alleged lack of legal materials during the relevant limitations period herein –between April 1996 and April 1997–would not serve to demonstrate a causal connection between the unavailability of such information and the untimeliness of the Petitioner's habeas petition. *See Bryant,* 499 F.3d at 1060-1061.

Further, Petitioner fails to explain why he waited 18 or more years, 10 of which were after the AEDPA's enactment, to seek federal habeas relief on his claims that are unrelated to the Nevada testimony, *i.e.,* Grounds II, IV and portions of Grounds V and VI that do not involve claims based on the Nevada testimony, given that the factual bases for such claims was known or should have been known to Petitioner at the time of conviction and/or appeal. The instant record overwhelmingly supports the conclusion that Petitioner did not act diligently to seek federal habeas relief as to Grounds II, IV and portions of Grounds V and VI that do not involve claims based on the Nevada testimony.

Nor is there any support that Petitioner's claim of "actual innocence" based on the Nevada testimony, which is unrelated to Grounds II, IV and portions of Grounds V and VI that do not involve claims based on the Nevada testimony, would work to equitably toll the limitations period as to these claims. When rejecting a similar argument, the Honorable Margaret A. Nagle, United States Magistrate Judge, stated in an Amended Report and Recommendation adopted by the District Court for the Central District of California that:

> The Supreme Court has made clear that equitable tolling cannot be afforded when a petitioner has not pursued his rights diligently. There is no tenable basis for finding that a state prisoner such as Petitioner can allow the AEDPA limitations period to expire as to known claims and then, after a decade has passed, assert an entitlement to equitable tolling as to such long-known claims simply because he pleads additional claims premised on actual innocence. The equitable tolling doctrine plainly is inapplicable to Grounds Five through Twenty-Eight and Thirty, and they are grossly untimely.

*Perez v. Evans,* 2009 WL 2104853, *14 (C.D. Cal. July 9, 2009). This Court agrees. Even if "actual innocence" factored into the AEDPA statute of limitations analysis, *see* discussion *infra,* at II.F, Petitioner would not be entitled to tolling, with regard to Grounds II, IV and portions of Grounds V and VI not related to the Nevada testimony.

With respect to Petitioner's claims based on the Nevada testimony, *i.e.,* Grounds I, III, and portions of Grounds V and VI, which Petitioner contends establishes his actual innocence, Petitioner was aware of such testimony in 1987. Yet, Petitioner took no steps to assert or prove his actual innocence until arguably late June 2005 when he filed his Third PCR Petition.[7] He asserts that he did not proceed earlier because of an 18-year delay in obtaining the transcripts. He also asserted to the state court that he did not receive the transcripts until August 2005. (Answer, Exh. CC at p.190) The fact that Petitioner first raised the issue of the Nevada testimony before the Arizona court on July 1, 2005, before his claimed August 2005 receipt of the transcripts, brings into question the veracity of his assertion that he was waiting for the transcripts before seeking relief. (*See* Petition, p.12). More importantly, once Petitioner became aware in 1987 that the Nevada testimony could

---

[7]Petitioner's Third PCR Petition was signed by Petitioner on June 27, 2005 and filed stamped by the state court on July 1, 2005. (Answer, Exh. V).

perhaps establish his actual innocence, one can only assume that he would have been highly motivated to act promptly in seeking relief. *See Perez,* 2009 WL 2104853 at *14 ("the Court can only assume that Petitioner, like any other prisoner claiming to be innocent, would have been highly motivated to act *promptly* in seeking relief.") (emphasis in original). Yet, he did nothing to establish his innocence over the many intervening years between 1987 and 1997 when the statute of limitations expired. Petitioner claimed to the state court that mail from Nevada was "sent to a wrong address for 17 years." (Answer, Exh. CC, p.190). Yet, nothing in the record demonstrates that Petitioner did anything during that 17-year period to obtain the transcripts, or to inquire as to why he had not received them, or to inform the appropriate Nevada parties of his current address. Instead, the record reflects correspondence dated 2005 regarding his request for the transcript of a 1986 Nevada extradition hearing. (Petition, Exh. C). To this Court, Petitioner claims that "the records were sent twice to a wrong address. Once he received the transcripts, he file[d] a Petition in State Court." (Reply, p.6). Petitioner also states that "when...[he] tried to obtain the transcript, he was told they would cost around $4,000.00 from the court in Nevada. He did *not* have the funds to purchase them. After many years, Petitioner found someone who knew how to get them at no cost." (*Id.*). Such position flatly contradicts his prior assertion that the transcripts had been sent to an incorrect address for 17 years. Petitioner does not provide correspondence or any other information suggesting that after the 1987 Nevada proceedings he immediately sought the transcripts but could not obtain them because of cost. Petitioner did not immediately go to the Arizona court with his claim and/or request for assistance to obtain the transcripts despite his actual knowledge of the 1987 testimony. There is no basis on this record for concluding that Petitioner pursued his rights diligently with respect to his claims related to the Nevada testimony.

"As both the Supreme Court and the Ninth Circuit have made abundantly clear, 'equitable tolling is unavailable where...a petitioner did not exercise reasonable diligence.'" *Perez*, 2009 WL 2104853 at *15 (*citing Guillory v. Roe,* 329 F.3d 1015, 1016, 1018); *Lawrence v. Florida,* 549 U.S. 327 (2007)). *See also Waldron-Ramsey,* 556 F.3d at 1015

("The Supreme Court and the policies behind AEDPA require that equitable tolling be used only to protect diligent petitioners facing extraordinary circumstances that prevent them from timely filing federal habeas petitions."). Petitioner herein has failed to satisfy his burden of showing that he pursued his rights diligently as required for application of the equitable tolling doctrine to Grounds I, III, and portions of Grounds V and VI relating to the Nevada testimony.

For the foregoing reasons, the equitable tolling doctrine does not apply to any of Petitioner's grounds for relief.

F.    Petitioner's claim of "actual innocence" does not alter the statute of limitations calculation

Petitioner argues that the AEDPA statute of limitations does not apply to claims of actual innocence (Reply, p.9 ("the claim of actual innocence does not have a time period to file.")).  Petitioner claims that the Nevada testimony supports his claim that he is actually innocent of the facts giving rise to the sentencing enhancement in this case because, according to Petitioner, the victim was 15 years of age at the time of the offense. *See State of Arizona v. Denning,* 155 Ariz. 459, 461, 747 P.2d 620, 622 (App. 1987) ("A.R.S. § 13-1406 does not establish the additional element that a defendant know the victim is under fifteen years of age.  Instead, it merely allows for the enhancement of the sentence if the victim is under fifteen years of age.  In this case, both victims were indisputably under fifteen years of age, and this fact triggers the enhancement provision.")).

The Supreme Court has held that a petitioner may establish a procedural "gateway" permitting consideration of the merits of procedurally defaulted claims if he demonstrates "actual innocence", thus bringing him within the "narrow class of cases..." implicating a fundamental miscarriage of justice.[8] *Schlup,* 513 U.S. at 315-317. *See also House,* 547 U.S.

---

[8]"'Actual innocence' means factual innocence, not merely legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623-624 (1998).  To meet this test, the petitioner must show that in light of new and reliable evidence not present at trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable

at 536-539. To pass through the *Schlup* actual innocence gateway, the petitioner must demonstrate that a constitutional violation occurred that "has probably resulted in the conviction of one who is actually innocent." *Schlup,* 513 U.S. at 327 (citations omitted). "A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead he must show that 'a court cannot have confidence in the outcome of the trial.'" *Majoy v. Roe,* 296 F.3d 770, 776 (9th Cir. 2002) (*quoting Carriger v. Stewart,* 132 F.3d 463, 478 (9th Cir. 1997)). Moreover, the actual innocence "standard is somewhat different for claims of sentencing error (as opposed to conviction)....[T]he Supreme Court has stated that where a petitioner claims to be actually innocent of the death penalty to which he has been sentenced, he must 'show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law...." *Cruz v. Clark,* 2009 WL 363399, *6 (C.D. Cal. Feb. 12, 2009) (*quoting Sawyer v. Whitley,* 505 U.S. 333, 336 (1992)). The Supreme Court has declined to address application of the actual innocence exception to claims challenging noncapital sentencing error. *See Dretke v. Haley,* 541 U.S. 386, 393 (2004). Circuit courts

---

doubt." *Schlup v. Delo,* 513 U.S. 298,327 (1995). *See also House v. Bell,* 547 U.S. 518, 536-539 (2006). The Ninth Circuit has expressly declined to decide whether the actual innocence gateway applies in cases where the petitioner has pled guilty or no contest. *See Smith v. Baldwin,* 510 F.3d. 1127, 1140 n. 9 (9th Cir. 2007) (en banc) ("We do not determine whether the *Schlup* actual innocence gateway always applies to petitioners who plead guilty (or no contest), but in this case the state has not raised the argument and more importantly, [petitioner] has failed to satisfy the requirements of *Schlup.* Thus, the question is ultimately irrelevant for purposes of the habeas petition under consideration."); *Griffin v. Johnson,* 350 F.3d 956 (9th Cir. 2003) (examining the actual innocence gateway in a case where the petitioner had pled guilty). *See also Chestang v. Sisto,* 2009 WL 2567860 (E.D. Cal. 2009) (noting that unlike *Schlup* which involved a jury verdict, a petitioner who has pled guilty has "essentially convicted himself."). Respondents herein have argued in the context of procedural default that "Petitioner does not deny that he committed the offenses to which he pleaded guilty." (Answer, p.20 n. 10 (*citing* Petition; *Schlup,* 513 U.S. at 327)). Herein, as in *Smith,* Respondents have not argued that the actual innocence gateway does not apply to a petitioner who has pled guilty. *See Smith,* 510 F.3d at 1140 n.9.

are split as to whether *Sawyer*'s actual innocence exception applies to claims of sentencing errors in noncapital cases such as Petitioner's and "the Ninth Circuit [has] yet to voice an opinion on this issue." *Cruz,* 2009 WL 363399 at *6 (footnote omitted). Regardless whether the exception is applicable to claims of noncpatial sentencing error, as discussed below, Petitioner is not entitled to tolling of the statute of limitations in this case.

Neither the Supreme Court nor the Ninth Circuit has held that a showing of actual innocence may excuse an untimely section 2254 habeas petition. *See Majoy,* 296 F.3d at 776 ("the question to be answered is whether surviving the rigors of this gateway has the consequence of overriding AEDPA's one-year statute of limitation, a legal question not yet decided by this Circuit or the Supreme Court."); *Perez,* 2009 WL 2104853 at *16 (setting out comprehensive survey of law on this issue); *Chestang,* 2009 WL 2567860 (same); *Larsen v. Adams,* 2009 WL 2481978 (C.D. Cal. Aug. 7, 2009) (same); *Jones v. Marshall,* 2009 WL 2189892 (C.D. Cal. July 17, 2009). In *Majoy*, the Ninth Circuit expressly declined to consider whether an adequate showing of actual innocence would override AEDPA's statute of limitation. *Majoy,* 296 F.3d at 776-777. Instead, the *Majoy* court remanded the matter for a determination whether an adequate showing of actual innocence could be made in that case.[9] *Id.* at 778. In a 2008 unpublished decision, the Ninth Circuit "assum[ed]" that *Schlup's* actual innocence gateway provided a basis for equitable tolling and held that the petitioner in that case failed to make the requisite showing of actual innocence. *Hartawan v. Gordon,* 265 Fed.Appx. 666 (9th Cir. Jan.31, 2008).

As recognized by Magistrate Judge Nagle in *Perez,* "[o]ther circuits have reached varying conclusions on the issue of whether a claim of untimeliness may be avoided by a claim of 'actual innocence.'" *Perez,* 2009 WL 2104853 at *16. The First Circuit, citing the petitioner's lack of diligence in raising his claim of actual innocence, has rejected the argument that it was unconstitutional to apply AEDPA's statute of limitations to bar a

---

[9]On remand, the district court determined that the petitioner in *Majoy* failed to establish actual innocence. *Majoy v. Roe,* __ F.Supp.2d __, 2009 WL 2489217 (C.D. Cal. Aug. 4, 2009).

petition even though the petitioner claimed actual innocence. *David v. Hall,* 318 F.3d 343, 347 (1st Cir. 2003), *cert. denied,* 540 U.S. 815 (2003). In so holding, the First Circuit stated:

> In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming: pre-trial motions must be filed on time, timely appeals must be lodged, and habeas claims must conform to AEDPA. In particular, the statutory one-year limit on filing initial habeas petitions is not mitigated by any statutory exception for actual innocence even though Congress clearly knew how to provide such an escape hatch.

*Id.* The court went on to note that:

> In AEDPA Congress adopted a form of actual innocence test as one component of its threshold requirements for allowing a second or successive habeas petition; but it also provided that this second petition is allowed only where the factual predicate for the claim of constitutional error could not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B).

*Id.* n.5. The court also recognized the

> strong public interest in the prompt assertion of habeas claims. Normally, the grant of habeas relief leaves the state free to retry the petitioner, but this becomes increasingly hard to do as memories fade, evidence disperses and witnesses disappear. A defendant who could not have filed his petition earlier is at least a sympathetic figure; one who has a known claim, defers presenting it, and then asks to be excused for the delay is unlikely to get cut much slack.

*Id.* at 347.

Other circuits have discussed the issue within the rubric of an equitable tolling analysis. *See Akrawi v. Booker,* 572 F.3d 252 (6th Cir. 2009) (The statute of limitations defense, "per the restrictions on habeas relief prescribed by Congress in AEDPA, effectively bars relief absent a showing that a petitioner's untimeliness should be excused based on equitable tolling and actual innocence") (*citing McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir. 2007) (wherein the Sixth Circuit recognized a claim of "actual innocence" as "[o]ne form of equitable tolling..." and rejected an untimely petition because the petitioner had not met the *Schlup* standard)); *Balsewicz v. Kingston,* 425 F.3d 1029, 1033 (7th Cir. 2005), *cert. denied,* 546 U.S. 1144 (2006), ("This Court has stated that actual innocence, instead of comprising a freestanding exception to the AEDPA, must be presented in conjunction with a claim that the habeas statute of limitations should be equitably tolled." (*citing Gildon v.*

*Bowen,* 384 F.3d 883, 887 (7th Cir. 2004))[10]; *Flanders v. Graves,* 299 F.3d 974, 977-978 (8th Cir. 2002), *cert. denied,* 537 U.S. 1236 (2003), (finding that equitable tolling did not apply to facts of petitioner's claim of actual innocence because the petitioner had not shown any circumstances external to him that were the cause of his delay, and also noting that "[f]or such a claim to be viable...a petitioner would have to show some action or inaction on the part of the respondent that prevented him from discovering the relevant facts in a timely fashion, or at the very least, that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations."); *Gibson v. Klinger,* 232 F.3d 799 (10th Cir. 2000) (stating in *dicta* that "[e]quitable tolling would be appropriate, for example, when a prisoner is actually innocent..." and the petitioner has "diligently pursue[d] his federal habeas claims.")[11].

The Fifth Circuit has held that a claim of actual innocence is not a sufficient circumstance to warrant equitable tolling of AEDPA's statute of limitations. *See Cousins v. Lensing,* 310 F.3d 843, 849 (2002); *Felder v. Johnson,* 204 F.3d 168, 173 (5th Cir. 2000) (petitioner's "actual innocence claim also does not constitute a 'rare and exceptional'

---

[10]However, the Seventh Circuit has also stated that
"actual innocence" is unrelated to the statutory timeliness rules...Actual innocence without a newly discovered claim does nothing at all. Although the statute leaves some (limited) room for equitable tolling, see *Pace v. DiGuglielmo*, 544 U.S. 408, ___ -___, 125 S.Ct. 1807, 1814-15, 161 L.Ed.2d 669 (2005), courts cannot alter the rules laid down in the text. Section 2244(d) has a rule for when new factual discoveries provide a fresh period for litigation; unless that standard is met, a contention that the new discoveries add up to actual innocence is unavailing. Prisoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action.
*Escamilla v. Jungwirth,* 426 F.3d 868, 871-172 (7th Cir. 2005); *see also Araujo v. Chandler,* 435 F.3d 678, 681-682 (7th Cir. 2005) (recognizing that tolling argument based on actual innocence "does not comfortably fall within any of the statutory or equitable principles..." and, instead, applying section 2244(d)(1)(D) analysis).

[11]The petitioner in *Gibson* did not claim that the actual innocence exception should toll the AEDPA statute of limitations.

- 24 -

circumstance given that many prisoners maintain they are innocent" and petitioner did not make a showing of actual innocence.). The published decisions of the Second and Eleventh Circuits reflect that these courts have avoided addressing the issue. *See Doe v. Menefee,* 391 F.3d 147, 173-174 (2d Cir. 2004), *cert. denied,* 546 U.S. 961 (2005); *Johnson v. Florida Dep't. Of Corr.,* 513 F.3d 1328, 133 (11th Cir. 2008), *cert. denied,* __ U.S. __, 129 S.Ct. 348 (2008); *Wyzkowski v. Department of Corr.,* 226 F.3d 1213, 1281-1219 (11th Cir. 2000). Further, "[t]he Third Circuit has not yet issued a published decision on this issue." *Perez,* 2009 WL 2104853 at *17 (noting that unpublished decisions from the Third circuit indicate that "assuming *arguendo* that actual innocence may permit avoidance of the limitations period, the analysis must be conducted under the rubric of the equitable tolling doctrine..."). Finally, the Fourth Circuit has not issued a published or unpublished decision regarding this issue.

This Court finds persuasive the rationale that, assuming *arguendo* that a claim of actual innocence factors into the AEDPA statute of limitations calculus, such a claim must be brought diligently:

> Indeed, the AEDPA statute of limitations *does not even commence to run* until the factual predicate for the claim could have become known with reasonable diligence. 28 U.S.C. § 2244(d)(1)(D). It becomes absurd to think that one who knows, or should know, of a claim for actual innocence may pocket the claim, and only spring it years or decades after the fact. In essence, a suspension or ignoring of the AEDPA statute of limitations is not necessary for claims of actual innocence. If petitioner had knowledge of the factual predicate of his claim of actual innocence years ago, as he must have if it is true, or should have had such knowledge years ago, his lack of diligence precludes him (and *should* preclude him) from proceeding at present. Congress anticipated newly discovered factual predicates, including those for actual innocence claims, and provided for such in the AEDPA limitations statute itself....[T]here is no reason to allow a petitioner to sit on [new evidence] after discovery until such time as petitioner feels the time is right to bring it.

*Chestang,* 2009 WL 2567860 at *13 (explaining that the AEDPA limitations provisions do not prevent a petitioner from bringing a claim of actual innocence based on newly discovered evidence or newly discovered testing procedures) (emphasis in original); *see also Perez,* 2009 WL 2104853 at *19 n. 25 ("the existence of Section 2244(d)(1)(D)-which provides a basis for a diligent state prisoner, *who has belatedly discovered new facts that give rise to an*

*actual innocence argument*, to obtain a delayed accrual date for his limitations period-begs the question of whether it is appropriate at all to infer into the statute an additional basis for reaching the same result, whether as a freestanding exception or as an equitable tolling circumstance.") (emphasis in original). Moreover, to the extent that such a claim may not fit within section 2244(d)(1)(D), the doctrine of equitable tolling is available to habeas petitioners. Under that analysis, "diligence unquestionably is a prerequisite to assertion of actual innocence as a basis for avoidance of a petition's untimeliness. Indeed, the Supreme Court has made clear that, in the context of Section 2254 habeas petitions and the AEDPA limitations period, equitable tolling *cannot* be afforded absent proof of a petitioner's diligence." *Perez,* 2009 WL 2104853 at * 19 (footnotes omitted) (emphasis in original). Further, this Court agrees that "[t]here is no apparent justification for concluding that claims of actual innocence should be not required to be brought diligently just as any other habeas claims, nor is there any apparent justification for affording a petitioner, who claims to be actually innocent, equitable tolling when he has failed to proceed with diligence." *Id.*

Even if an actual innocence exception to the statute of limitations did not fall under the rubric of equitable tolling, this Court is persuaded that any such exception would necessarily include a diligence component:

> In the sole instance within the AEDPA in which Congress expressly provided for actual innocence to serve as a basis for avoiding a procedural limitation, Congress conditioned that exception on proof that the habeas petitioner exercised "due diligence." Section 2244, the same statute containing the AEDPA limitations period, also limits the ability of state prisoners to bring second or successive habeas petitions. They are precluded from doing so unless they show the existence of a claim, not previously presented, that either: is based on a new and retroactive rule of constitutional law; or rests on a factual predicate "that could not have been discovered previously through the exercise of due diligence" and, if proven, establishes actual innocence. 28 U.S.C. § 2244(b)(2)(A) and (B)....It would be incongruous to *imply* into Section 2244 a basis for avoiding one of the statute's procedural bars (the timeliness requirement) without imposing a diligence component, when the statute's only *express* basis for avoiding its other procedural bar (the second or successive petition prohibition) does contain such a requirement.

*Perez,* 2009 WL 2104853 at *19 (footnotes omitted) (also noting that 2254(e)(2) permitting evidentiary hearings where a petitioner failed to develop the factual basis for his claim in state court, also contains a due diligence requirement) (emphasis in original).[12]

As discussed *supra,* at II.E., Petitioner's claim of actual innocence based on the Nevada testimony has no relevance to Grounds II, IV and portions of Grounds V and VI not relating to that testimony. Further, with regard to Petitioner's remaining grounds for relief, *i.e.,* Grounds I, III, and portions of Grounds V and VI relating to the Nevada testimony, for the reasons stated above *see supra,* at II.E., Petitioner did not pursue his claim, known to him since 1987, of actual innocence with reasonable diligence.

> There is no compelling reason why a petitioner who delays in presenting claims based on known facts should be permitted to avoid the statute of limitations simply because he asserts 'actual innocence' and claims an attendant exemption from the procedural requirements to which other Section 2254 habeas litigants must adhere....A litigant who knows of the circumstances giving rise to such claims and of his asserted innocence and yet does nothing but sit on his claims for over 15 years, should not be permitted to avoid the requirements with which other prisoner litigants struggle to comply simply because he decides to claim that he is innocent [over] a decade and a half after his conviction.

*Id.* at *19. Like the petitioner in *Perez*, Petitioner herein "did not act in a timely manner and is now subject to the consequences of his own dilatory conduct. The habeas remedy is not

---

[12]The *Perez* court also astutely points out that:

> The existence of the remedies provided by these two provisions for petitioners who have been proceeding diligently, but learn of facts supporting actual innocence claims after the one-year limitations period has run under Section 2244(d)(1)(A) and/or after a federal habeas petition already has been brought and ruled upon shows that Congress apparently anticipated newly discovered actual innocence claims and provided mechanisms that allow them to be raised on a delayed basis. These existing remedies, thus, arguably assuage Suspension Clause or similar constitutional concerns.

*Perez,* 2009 WL 2104853 at *19 n.25. Here, the claims relating to the Nevada testimony were available to Petitioner from 1987 onward and, had he diligently exhausted state remedies immediately upon learning of such claims, he would have had ample time after AEDPA's enactment in which to bring his claims within the statutory deadline. *See e.g. David,* 318 F.3d at 347. He failed to do so.

1  inadequate or ineffective for those who pursue it." *Id.* at *3.   In light of Petitioner's lack
2  of diligence, the Petition herein is untimely filed.

3  **III.    CONCLUSION**

4          Petitioner's Petition for Writ of Habeas Corpus is untimely filed and, thus, barred
5  from federal court review.

6  **IV.    RECOMMENDATION**

7          For the foregoing reasons, the Magistrate Judge recommends that the District Court,
8  after its independent review, dismiss Petitioner's Petition for Writ of Habeas Corpus. (Doc.
9  No. 6).

10         Pursuant to 28 U.S.C. §636(B), an party may serve and file written objections within
11 ten days after being served with a copy of this Report and Recommendation. If objections
12 are filed, the parties should use the following case number: **CV 07-8021-PCT-PGR.** A party
13 may respond to another party's objections within ten days after being served with a copy
14 thereof. *See* Fed.R.Civ.P. 72(b).

15         If objections are not timely filed, then the parties' right to *de novo* review by the
16 District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114,
17 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

18         DATED this 26th day of October, 2009.

19

20

21    _____
                    Héctor C. Estrada
22              United States Magistrate Judge

23

24

25

26

27

28